IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILFREDO HERNÁNDEZ LIZARDI,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION and/or FEDEX EXPRESS D/B/A/ FEDEX; INSURANCE COMPANY A, B and C; CORPORATIONS XYZ; CARLOS DUEÑO, HIS WIFE JANE-DUEÑO AND THEIR CONJUGAL LEGAL PARTNERSHIP; DANIEL MARTINEZ, HIS WIFE JOAN-MARTINEZ AND THEIR CONJUGAL LEGAL PARTNERSHIP; ROLANDO MEDINA, HIS WIFE JUNE-MEDINA AND THEIR CONJUGAL LEGAL PARTNERSHIP; JOHN AND JANE DOE<br>    Defendants. | CIVIL NO.: 16-            (     )<br><br>FAMILY MEDICAL LEAVE ACT; RETALIATION; DISABILITY DISCRIMINATION, DAMAGES; BREACH OF CONTRACT; UNJUST DISMISSAL ACT<br><br>TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

    **COMES NOW** Plaintiff, Wilfredo Hernandez-Lizardi, through the undersigned attorneys, and very respectfully state and pray as follows:

**I.    JURISDICTION AND VENUE**

    1.    This is a civil action brought pursuant to the Family Medical Leave Act, ("FMLA") of 1993 as amended, 29 U.S.C. § 2601 *et seq*., the American With Disabilities Act of 1990, 42 U.S.C.A. §§ 12101 *et seq*. ("ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq*., and 28 U.S.C. §1331; Puerto Rico Act No. 44 of July 2, 1985, Laws Ann tit. 1, § 501 ("ADITA"), Law No. 115 of December 20, 1991, Laws Ann tit. 29, § 194, *et seq*.;

1

Law No. 80 of May 30, 1976, Laws Ann tit. 29, § 185, *et seq.*, Articles 1802 and 1803 of the Puerto Rico Civil Code, Laws Ann tit. 31 §§ 5141-5142; and Article 1042 of the Puerto Rico Civil Code, Laws Ann tit. 31 §2992, et seq., seeking compensatory, economic damages, back pay, front pay, reinstatement, equitable and injunctive relief, and liquidated damages (double pay), to seek redress for defendant's interference with Plaintiff's rights and on account of Defendant's retaliation against Plaintiff for having exercised those rights. Plaintiff claims not only economic damages but reasonable attorney's fees, and costs and expenses to be paid by Defendant.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §§ 1331 and 1343 since this is an action arising under the Constitution and laws of the United States to recover compensatory and punitive damages resulting from the deprivation of plaintiff's federal rights and privileges.

3. Plaintiff timely files his complaint before this Court within two (2) years after Defendant failed to be restored by the employer to the position he held before he went on FMLA leave.

4. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), to hear and adjudge claims under the Commonwealth of Puerto Rico's Law No. 80 of May 30, 1976 as amended, known as the Puerto Rico Wrongful Discharge Act (29 L.P.R.A. § 185 et seq.); Act No. 115 of December 20, 1991 29 L.P.R.A. § 194 et seq., for retaliation, as amended by Act No. 169 of 2014, Puerto Rico Act No. 44 of July 2, 1985, P.R. Laws Ann. Tit 1, § 501 ("ADITA"); Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, 5142, and Article 1042 of the Puerto Rico Civil Code, Laws Ann tit. 31 §2992, et seq.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all the discriminatory employment practices alleged herein were committed within the judicial district comprising the Commonwealth of Puerto Rico.

6. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff demands a trial by jury in the instant case. Fed. R. Civ. P. 38 b.

## II. PARTIES

7. Plaintiff Wilfredo Hernández-Lizardi is of legal age, married, property owner, citizen of the United States and resident of Caguas, Puerto Rico. Hernandez is an eligible employee under the FMLA as defined in 29 U.S.C. § 2611(2).

8. Federal Express Corporation and/or FedEx Express D/B/A/ FedEx, hereinafter collectively referred to as "FedEx" has its principal offices at 701 Waterford Way, Suite 1000 Miami Fl 33126. The local offices of Defendant are located at Metro Office Park, 2nd Street Lot 12, Guaynabo, P.R. 00969.

9. FedEx is an employer as defined under the FMLA. See 29 U.S.C. § 2611(4).

10. Insurance Company A, B & C is an insurance company, authorized to do business in the Commonwealth of Puerto Rico, that upon information and belief, issued a policy covering the risks or claims asserted herein against FedEx. Under the provisions of the Insurance Code of Puerto Rico, a direct action against the insurer is permitted and is being asserted. Once the true identity of the insurance company is known, Plaintiff will substitute the real co-defendant insurance company in the case with the unknown identity party.

11. Co-defendants Unknown Corporations XYZ, which businesses addresses are unknown, were at all relevant times responsible for the acts alleged in the Complaint. At this time, the identity of this corporation is unknown. Plaintiff believes that upon initial discovery,

3

the identities of these companies will be ascertained, and the caption of the case will be amended for inclusion of the correct co-defendants.

12. Co-defendant Mr. Carlos Dueño, HCMP Advisor. He is being sued in his personal capacity, as is his wife, Jane-Dueño, and their Legal Conjugal Partnership. Their personal address is unknown. However, Mr. Dueño's work address is the following: Metro Office Park, 2nd Street Lot 12, Guaynabo, P.R. 00969.

13. Co-defendant Mr. Daniel Martínez is being sued in his personal capacity, as is his wife, Joan-Martínez, and their Legal Conjugal Partnership. Their personal address is unknown. However, Mr. Martínez' work address is the following: Metro Office Park, 2nd Street Lot 12, Guaynabo, P.R. 00969.

14. Co-defendant Mr. Rolando Medina is being sued in his personal capacity, as is his wife, Jane-Medina, and their Legal Conjugal Partnership. Their personal address is unknown. However, Mr. Medina's work address is the following: Metro Office Park, 2nd Street Lot 12, Guaynabo, P.R. 00969.

15. Co-defendants John and Jane Doe, are natural persons or corporations authorized to do business in the Commonwealth of Puerto Rico, who at all relevant times was responsible for the acts alleged in the Complaint. Their identity is unknown. Plaintiff believes that upon initial discovery, the identity of this person will be ascertained, and the caption of the case will be amended for inclusion of the correct co-defendant.

### III.   FACTS

16. Mr. Wilfredo Hernández-Lizardi commenced working for FedEx in the year 1992 as Cargo Handler. After various promotions, he was promoted to the position of Courier DOT, a permanent full-time position, in 1994. Hernandez occupied said position at FedEx until he was

dismissed without just cause.

17. Throughout his employment, Hernandez received numerous recognitions from his supervisors for his commitment, dedication, professionalism and excellent performance. As a result, he received outstanding performance reviews.

18. As Courier DOT, Hernandez had to provide pick up and delivery services, support to customers on issues regarding features of services, while complying with all operational, security and safety policies, procedures and processes with the objective of meeting service commitments and maximizing customer satisfaction.

19. In October 2013, Hernandez requested and was granted leave under the Family Medical Leave Act ("FMLA") because of family and medical reasons.

20. According to Company policies regarding medical leaves of absence employees such as Plaintiff are eligible to Short Term Disability benefits (STD) for a maximum period of 26 weeks. Employees are also eligible to receive Long Term Disability benefits (LTD) after STD benefits expire. LTD benefits extend to a maximum of 2 years. Thus, the maximum allowable amount of time offered to a full-time employee with an active STD/LTD claim for a leave of absence is 30 months.

21. On September 30, 2014, within the 12-month period of job protected leave the FMLA offers, Mr. Hernández requested to be restored to his employment, after having been on an FMLA leave.

22. When Hernandez requested to be restored to his previous full time position he handed FedEx a certification from his health care provider, who certified that Plaintiff was able to resume full duty work.

23. That same day, Mr. Carlos Dueño, FedEx HCMP Advisor, told Hernandez that he

5

could not return to work as a commercial driver (DOT driver) because he had a mental condition and that he had allegedly been in a mental hospital. He informed him furthermore he had to undergo a physical examination in order to comply with the Department of Transportation requirements (DOT physical).

24. Hernandez has been diagnosed with a depression and bipolar disorders. His condition is recognized as a disability, as defined by the ADA, the ADAAA and the RA. His condition is an impairment that substantially limits one or more of her major life activities.

25. On October 3, 2014, Mr. Hernández underwent said examination, which was performed by Dr. Leonora Díaz, a physician selected by the employer. This examination was a general examination and was not related Plaintiff's mental condition, for which he had requested FMLA.

26. FedEx did not inform Hernandez the outcome of said examination until November 7, 2014, when Mr. Dueño called him and asked him to meet.

27. That day Dueño gave Hernandez a letter dated October 10, 2014, in which he informed him, for the first time, that the eNRCME examiner (medical examiner) did not recommend Hernandez' clearance to return to commercial driving, as he was allegedly not fit to occupy his position, and that he could no longer be a Courier DOT.

28. FedEx refused to restore Hernandez alleging that he was not qualified to return to the position he held when he went on FMLA leave.

29. After this the employer refused to restore Hernandez to any job, even after he was given full duty to return to work, as evidenced on a letter dated November 26, 2014, that Aetna Life Insurance Company ("Aetna"), FedEx's benefit coordinator sent Hernandez.

30. FedEx interfered with Hernandez' rights under the FMLA and retaliated against

him and regarded him as disabled when he requested to be restored to the position he held when he went on FMLA leave.

31. After Hernandez requested to be restored to his position, FedEx delayed his return to work for a period of five (5) months, in violation of FMLA and its own policies.

32. FedEx policies provide that the employer will hold a position open for the employee on leave at least 365 calendar days and the exhaustion of any eligible FMLA entitlement. FedEx failed to follow the FMLA and its own policies when it failed to keep Hernandez' position open for 365 calendar days.

33. FedEx's refusal to restore Hernandez was one of the causes of a series of adverse employment actions that culminated in his dismissal.

34. On February 2, 2015, FedEx submitted Hernández to another medical examination. This time, however, Dr. Leonora Díaz released Hernandez to return to work with no restrictions; FedEx then gave him clearance to return to commercial driving (DOT driver) by the Medical Review Office.

35. Dr. Díaz performed on Hernandez the same medical examination it had done in October 2014.

36. On February 6, 2015, Hernandez was given clearance by the Medical Review Office to return full duty to commercial driving.

37. The delay in reinstating Hernandez was not due to his failure, but the employer's discriminatory and retaliatory animus. This animus is evidenced in the way it handled his "reinstatement". The company violated company policy when it failed to offer him a job when he requested reinstatement; the employer did not even offer him a Temporary Return to Work (TRW), or temporary assignment.

38. Hernandez' request for reinstatement was made within the 365 days he had to keep the job he held before he went on FMLA leave.

39. The employer, willfully, delayed his reinstatement so this period would pass and it no longer had to reinstate him to his previous job. This is evidenced by the fact that nothing happened between the first and last medical examination Dr. Díaz made.

40. The only thing that happened was that Dr. Diaz apparently changed her opinion that Hernandez was fit to return to commercial driving.

41. It was not until February 9, 2015, that the employer agreed that Plaintiff had been released to full duty without restrictions, but offered him a part-time position to the airport where the employer knew Plaintiff could not perform the functions of his job because of his asthma.

42. Even though Hernandez was released to full duty without restrictions, he was approved to return to work with temporary restrictions and limitations to a place where the employer knew he could not work because of a medical condition of asthma. This assignment was made by Co-defendant Daniel Martínez.

43. However, again, on February 20, 2015, five (5) months after Hernandez requested to be restored, the employer informed Mr. Hernández that he had been approved to return to work with temporary restrictions and limitations (TRW assignment), in contravention to the February 9, 2015 letter in which he was informed that he had been released to full duty without restrictions. He was given a temporary position as a Courier DOT, a *de facto* downgrade of his position.

44. Accordingly, he could not work more than twenty-eight (28) hours per week (5.5 per day), with temporary restrictions of not being able to work at his location; this was a part-time position.

45. For FedEx the time worked on TRW is considered part of his medical leave of absence period and count toward the maximum duration of his medical leave.

46. Hernandez informed FedEx he did not agree with the TRW assignment as Aetna had informed him that he had received a full release to work, a fact that is reflected in a letter dated February 9, 2015, that the employer gave him, offering him a part-time Handler DOT position, while it acknowledged that based on his medical release and/or review by the claims administrator, he had been released to full duty without restrictions.

47. Furthermore, the 1-8 Policy, regarding Leave of Absence states that employees who return from a medical leave of absence of more than 26 weeks to active permanent work and experience a recurrence of the same or related condition within 180 calendar days of their return resume their original leave.

48. As of September 30, 2014, when he requested reinstatement, Hernandez had only used up eleven (11) months of the allowable absence of thirty (30) months of LTD.

49. On February 24, 2015, the employer through Daniel Martínez, suspended Hernandez without pay for an alleged violation of company policy.

50. Plaintiff was suspended without cause because of discriminatory and retaliatory reasons.

51. On February 26, 2015, Hernandez went to the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources to receive guidance regarding a claim against FedEx for harassment and retaliation, of which he gave notice to his employer.

52. On February 27, 2015, Hernandez went again of FMLA leave and/or a medical leave of absence. Because of the employer's discriminatory and retaliatory animus Hernandez had to take another medical leave of absence to treat his mental condition.

53. On October 28, 2015, Hernandez filed a charge of discrimination and retaliation before the EEOC.

54. On the charge he claimed that after returning from FMLA leave, FedEx refused to reinstate him, as described above, in violation of the FMLA, company policies, and because of his mental condition.

55. Hernandez requested reinstatement on March 30, 2016.

56. On April 7, 2016, Hernandez received a communication from Mr. Carlos Dueño, in which he was notified that he had been dismissed from his employment.

57. In the letter Dueño stated that Hernandez was placed on medical leave of absence on February 27, 2015, and that his leave expired on February 27, 2016.

58. According to company policies said leave would have expired on September 2016, not on February 27, 2016.

59. Company policy regarding medical leaves of absence states that Long Term Disability benefits extend to a maximum of 2 years. The February 27, 2015, medical leave of absence would have expired on September 2016, not on February 27, 2016, as the termination letter wrongly indicates, as he had 19 months left of the allowable amount of time offered under disability leave.

60. The employer refused to reinstate Hernandez and, instead, terminated him from his employment.

61. Even though Hernandez appealed the employer's decision to terminate him, the employer stood by its decision and on August 10, 2016, FedEx determination to dismiss Hernandez, after twenty four (24) years of employment, became final.

62. FedEx's determination of terminating Hernandez' employment is against

company policy and is discriminatory and retaliatory.

63. Hernandez' termination is also the employer's retaliatory response to the fact that he filed a charge of discrimination before the EEOC on October 28, 2015.

64. FedEx's refusal to restore Hernandez to the position he held before he went on FMLA leave, violated the FMLA, and it was retaliatory in nature.

65. Although Hernandez had passed his fitness for duty medical examination, defendant first failed to restore him to the position he held before he went on his medical leave of absence, then dismissed him from work because he suffered from a health condition that defendants believe is a disability.

66. FedEx dismissed Hernandez even though, at the time of his termination, and during his employment with he was performing his duties in a satisfactory manner, and he provided all the necessary medical evidence that stated that he was able to carry out her work.

67. The disciplinary actions taken against Hernandez took place because FedEx perceived him as having a limitation that precluded him from doing his job. FedEx perceived and treated Hernandez as disabled and imposed a limitation on his opportunity to work. This is evidenced, where FedEx, through their agents, held meetings with plaintiff only to discuss and inquire about his medical conditions and, upon realizing that he suffered a medical condition, required Hernandez to take a fitness for duty medical examination.

68. When FedEx acknowledged that Hernandez had a mental condition they disqualified him from his employment, only because they perceived that he was incapable of fulfilling his duties.

69. FedEx could not articulate a legitimate, non-discriminatory reason for Hernandez' employment termination. FedEx acted based on the belief that Hernandez could not do his job, and/or was not qualified for it, not because he could not actually perform his duties, but because they thought that his medical condition could limit his abilities to perform his job.

70. Defendants' biased, unjustifiable and unlawful adverse employment actions, including the generalized comments about his mental condition, affected Hernandez, created a hostile work environment for him and imposed a limitation on his opportunity to work.

71. Defendants cannot articulate a legitimate, non-discriminatory reason for their adverse employment actions.

72. As a direct consequence of defendants' adverse employment actions, which forced him out of his job, Hernandez is not receiving any income, and has to undergo psychiatric medical treatment to receive treatment for his conditions.

73. These discriminatory acts made by the defendants, whom have acted along in common agreement, aggravated Hernandez' medical conditions.

## FIRST CAUSE OF ACTION
### (Interference with FMLA Rights and Retaliation)

74. Plaintiff repeats and incorporates by reference each and every preceding allegation as if fully set forth herein.

75. FedEx is a company employs more than fifty (50) employees, and is a person engaged in commerce or in any industry affecting commerce, or is a successor in interest of the employer.

76. After Hernandez returned from FMLA leave, he should have been restored to the same job or to an "equivalent job", he held before he went on FMLA leave.

77. FedEx interfered, restrained, and denied Plaintiff's rights provided by the FMLA, as explained in detail above.

78. FedEx unlawfully discharged and discriminated against Plaintiff for exercising his rights under FMLA.

79. Hernandez suffered economic damages when he was denied job restoration to

which he was entitled under FMLA.

80. Defendants retaliated against Plaintiff because he was under an FMLA leave when it failed to restore him to the position he held before he went on FMLA and, instead, offered him a part time position, in which he received a significantly reduced salary.

81. Hernandez is entitled to each and every damage proximately caused by the Defendant's unlawful conduct, including loss of pay, employment benefits, back and front pay, and any other compensation, plus liquidated damages. Hernandez seeks reinstatement to his former position with all accrued salaries, and benefits.

82. Hernandez claims for the damages suffered on account of this cause of action an amount of no less than $250,000.00. This amount increases by the mere passage of time.

## SECOND CAUSE OF ACTION
**(Retaliation under Local Law)**

83. Plaintiff repeats and incorporates each and every preceding allegation as if fully set forth herein.

84. Hernandez termination was retaliatory, as there was no just cause for his dismissal, other than being engaged in a protected conduct.

85. As a direct and proximate result of this intentional violation of Hernandez' rights, Plaintiff claims an amount of damages of no less than $250,000.00 including the economic damages and the mental damages and anguish suffered on account of defendant's illegal and retaliatory conduct.

86. Hernandez further claims the double penalty imposed by law.

## THIRD CAUSE OF ACTION
**BREACH OF CONTRACT**

87. Plaintiff repeats and incorporates each and every preceding allegation as if fully

set forth herein.

88. While covered by the employer's disability plan, Hernandez was terminated from employment in breach of the leave benefit he had been granted by his employer and in breach of the contract of employment he had with his employer. Hernandez was fired within the term disability benefit grants employees covered under such benefit program.

89. Defendant did not fulfill plaintiff's employment contract, after it arbitrarily, unjustifiably, and without just cause rescinded the same, when it terminated plaintiff's job while said contract was still in effect. This termination is contrary to Puerto Rico's Civil Code article 1042.

90. FedEx's actions of not fulfilling the employment contract and in not providing Hernandez with a work benefit he had been granted, and had been entitled to, entitles Hernandez to claim from defendant the specific performance of such contract of plus an additional award in damages.

91. Pursuant to the contract between the parties, defendant FedEx owes Hernandez the sum of $250,000.00 for unearned income for the duration of the contract of employment.

92. Pursuant to applicable law, Hernandez requests that FedEx compensate him in an amount of no less of $250,000.00 for the damages suffered due to the breach of contract.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE AMERICAN WITH DISABILITIES ACT AND**
**ACT NO. 44 OF JULY 2, 1985**

93. Plaintiff repeats and incorporates each and every preceding allegations as if fully set forth herein.

94. The Company knew the details of Hernandez' disability, and that said disability did not impair him to do his job efficiently.

95. The co-defendants' conduct was extremely inconsiderate especially towards and

employee who had been working for the company twenty four (24) years, and shows the company failed to reasonable accommodate Hernandez.

96. In the alternative, Hernandez was discriminated against for having a record of a health condition and for having informed his employer and his supervisor of his illness.

97. Co-defendants have engaged in unlawful and willful employment practices and have discriminated and taken adverse employment actions against Hernandez on account of his health condition, and/or of Hernandez having a record of such impairment.

98. Defendants have engaged in unlawful and willful employment practices and have discriminated and taken adverse employment actions against Hernandez on account of regarding him as physically and mentally impaired and or of Hernandez having a record of such impairment.

99. As a result of her employer's discriminatory actions, Hernandez is entitled to back pay, liquidated damages, double damages, prejudgment interest, reasonable attorneys fees and court costs, as well as front pay, in an amount of no less than $100,000.00.

100. Defendants have engaged in unlawful and willful employment practices and have discriminated and taken adverse employment actions against Hernandez on account of regarding his as physically and mentally impaired and or of Plaintiff having a record of such impairment.

### FIFTH CAUSE OF ACTION
### (Unjust Dismissal)

101. Plaintiff repeats and incorporates each and every preceding allegations as if fully set forth herein..

102. Hernandez was dismissed without just cause.

103. Hernandez worked for FedEx for approximately twenty Four (24) years.

104. Hernandez is entitled to a severance of six (6) months pay. plus three (2) weeks of pay for each year worked or seventy-two (72) weeks of pay.

105. Hernandez' highest compensation for the last three (3) years prior to his

termination was $30,000.00 approximately.

106. Hernandez is thus entitled to the payment of a severance of $15,000.00 (6 months pay) plus $41,538.46 (72 weeks of pay) for a total severance of $56,538.46 under Act No. 80.

107. Hernandez is entitled to attorney's fees and prejudgment interest on this claim.

## SIXTH CAUSE OF ACTION
## VIOLATION OF ARTICLE 1802 OF THE Puerto Rico CIVIL CODE

108. Plaintiff repeats and incorporates each and every preceding allegations as if fully set herein.

109. Codefendants have through their negligent and willful acts caused Plaintiff's damages. Therefore, they are responsible for the damages suffered by the Plaintiff.

110. Co-defendants Mr. Carlos Dueño, his wife Jane-Dueño, and the legal Partnership constituted among them have through their negligent and willful acts caused Plaintiff damages. Therefore, they are responsible for the damages suffered by the Plaintiff.

111. Co-defendants Mr. Rolando Medina, his wife June-Medina, and the legal Partnership constituted among them have through their negligent and willful acts caused Plaintiff's damages. Therefore, they are responsible for the damages suffered by the Plaintiff.

112. Co-defendants Mr. Daniel Martínez, his wife Joan-Martínez, and the legal Partnership constituted among them have through their negligent and willful acts caused Plaintiff's damages. Therefore, they are responsible for the damages suffered by the Plaintiff.

## PREJUDGMENT INTEREST, ATTORNEY FEES AND COSTS

113. Plaintiff repeats and incorporates each and every preceding allegations as if fully set herein.

114. At the end of this action the Defendants will be liable to Plaintiff for any pre judgment interest, attorney fees, and costs as permitted by law. 42 U.S.C. §1988; 42 U.S.C. § 2000e-16.

## PRAYER

Wherefore, premises considered, plaintiff demands judgment against defendants for the following:

1. Enter Judgment against defendants.

2. Award Plaintiff costs, interests, expenses and attorneys fees, as provided by law;

3. Plaintiff request any and all other remedies appropriate under the law or in equity, injunctive relief and any other remedy available;

4. Compensatory damages;

5. Punitive damages;

6. Back pay;

7. Front pay;

8. Plaintiff requests state law remedies of double damages;

9. Preliminary and permanent injunctive relief, enjoining defendants from engaging in such unlawful conduct.

10. The payment of the severance she is entitled to due to her constructive discharge.

11. Plaintiff further demands trial by jury on all issues.

## TRIAL BY JURY

Plaintiff demands that all causes of action be tried before a jury.

**WHEREFORE**, all premises considered, Plaintiff prays that judgment be entered in his favor and against defendant, for all claims asserted herein.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 29th day of September 2016.

**MANUEL PORRO VIZCARRA**
**LAW OFFICES**
Calle Escorial 382
Urb. Caparra Heights
San Juan, P.R. 00920
Telephone 787-774-8200
Facsimile 787-774-8297


**/S/MANUEL PORRO-VIZCARRA**
USDC # 207006
Email:  mpvlaw@centennialpr.net


**/S/MYRMARIE LABORDE VEGA**
USDC # 226107
Email: ml@mpvlawpr.com